Louis Youngstein *vs.* Max Croman *et al.*

March 26, 1925.

Present: Sweetland, C. J., Stearns, Rathbun, Sweeney, and Barrows, JJ.

Barrows, J. Heard on appeal from final decree of the Superior Court. The bill, which complainant carefully states does not charge fraud, seeks to set aside an award of arbitrators and prays that certain real estate standing in respondent Sadie's name be reconveyed to complainant and that a mortgage thereon held by respondent Max be cancelled.

Respondents' plea sets up that prior to the filing of the bill the entire cause of action was submitted to arbitration and that an award was made adjudging respondents lawfully entitled to the property sought to be recovered in this suit. A hearing upon the truth of the plea resulted in a

finding that the arbitration was a fair one settling the merits of the controversy and should not be disturbed. It was followed by a decree dismissing the bill of complaint.

Appellant attacks the decree upon the ground that he did not agree to arbitration by the gentlemen who made the award nor did he know who actually participated in the arbitration; that the umpire was related to one respondent; that the hearings before the arbitrators were not properly conducted; that the award on its face is improper because participated in by the umpire without evidence of disagreement by the arbitrators and because the award is lacking in certainty.

The arbitration was not pursuant to any statute. The arbitrators who acted were two attorneys and a third man, Colitz, whom they selected and who by the terms of the submission was to act only in case of disagreement between the other two. Colitz was not related to respondent Max. While the testimony indicates some preliminary expectation by the complainant that the arbitration board was to be composed of men other than those who acted, the evidence fairly indicates that he not only had complete understanding of what he was signing when he agreed to arbitration but continued to be satisfied with the proceedings of and before the arbitrators and umpire until the award was made. The evidence does not show that any advantage was taken of his ignorance and inexperience or unfamiliarity with the English language. It shows he had full knowledge of who were acting as arbitrators and of what was being done at the proceedings. The trial justice who saw and heard the parties calls attention to the fact that complainant himself asked for arbitration and follows with the apt comment, "He got what he asked for and he is not satisfied with the results." The questions of fact were decided correctly by the trial court.

The award is sufficiently certain. There can be no reasonable doubt on the face of it as to what the arbitrators determined or that the determination fully conclusively

answered the questions raised by the parties. 5 C. J. 148, § 358.

We are called upon to consider the effect of the participation in the proceedings by Colitz as umpire. The two arbitrators did not disagree. Prior to any hearings they selected Colitz as umpire. This was proper. 5 C. J. p. 107, § 237; *Stevens* v. *Brown*, 82 N. C. 460, at 462; *Rigden* v. *Martin*, 6 Harr. & J. (Md.) 403. No authoritative action by the umpire, however, could occur until the arbitrators disagreed. His signature to the award was valueless and it may be treated as surplusage. *Collings Carriage Co.* v. *German Insurance Co.*, 97 Atl. Rep. 726, (N. J. Eq.). It remains to be considered whether the umpire's presence and participation in the hearings vitiated the award. His presence alone at the hearings and discussions relative to the award was not objectionable. It could not be foreseen when and upon what matters disagreements might arise. It often would be a fruitless and even an unfair method of conducting arbitration hearings to insist upon the umpire's absence until the disagreement actually arises. Reiteration of testimony would be required and the setting and atmosphere of the second hearing might differ much from that under which evidence was taken at the first. One weighing evidence in a judicial capacity often gets much light from the circumstances surrounding a trial. The umpire to successfully perform the duties imposed upon him may properly be present at all meetings of the arbitration board.

The evidence in this case does not show the exact part that Colitz played in the hearings and discussions leading up to the decision. There is no evidence that he dominated the board or that the others yielded to his views. On one occasion it appears that he interpreted some matter into Yiddish about which all had been talking in English in order to be certain that Youngstein understood it whereupon Youngstein told him that he understood the matter fully. We may fairly assume on the evidence that Colitz was one

of three independent actors in the proceedings consulting and interchanging views with the others.

It may be conceded that strictly speaking an arbitration to be made by two men acting together is not the same as one made by three men so acting. This view is set forth in *Royse* v. *McCall*, 5 Bush. (Ky.) 695 (1869), which held that such participation vitiated the award. Practical considerations, however, have led most courts to refuse to pursue "nice objections" and "subtle refinements" in order to overturn a fair award. *Stevens* v. *Brown*, 82 N. C. 460. The purpose of arbitration is to avoid litigation. The effect of the Kentucky case is to continue it where no disagreement really exists. All that parties can fairly demand is that the two original arbitrators shall exercise their own judgments. Parties are not primarily concerned with whom the arbitrators talk or why they reach their results, if the judgment is the honest judgment of the arbitrators and free from improper influences. We see nothing in the evidence to show that the special umpire's participation in any way prevented securing such judgment. The two arbitrators had formerly acted in other matters as lawyers for the parties. When they agreed in this case there is no reason to believe that valid differences longer remained. To vitiate their award would be upon a technicality. That the presence and participation of the umpire where the arbitrators have not disagreed does not invalidate the award is held in cases cited in 5 C. J. p. 110, § 250, of which we have examined *Bryan* v. *Jeffreys*, 104 N. C. 242; *Stevens* v. *Brown*, 82 N. C. 460; *King* v. *Cook*, 4 Am. D. (Ga.) 715; *Adams* v. *Ringo*, 79 Ky. (1880) 211; *Rigden* v. *Martin*, 6 Harr. & J. (Md.) 403, citing early English authorities; *Eads* v.*Williams*, 4 De G. M. & G. 674; *Ferguson* v. *Munro*, 4 N. B. 660; *Ritchie* v. *Snowball*, 26 N. B. 258. The Kentucky case last cited does not refer to the earlier case of *Royse* v. *McCall*, *supra*, and perhaps is inconsistent therewith unless it may be distinguished by the fact that the court in the later case finds no evidence that the umpire acted

except on questions where disagreement existed, as was the situation in this court in *Campbell* v. *Union Mutual Fire Ins. Co.*, 124 Atl. 469.

The appeal is dismissed, the decree appealed from is affirmed and the cause is remanded to the Superior Court for further proceedings.

*Joseph H. Coen, McGovern & Slattery*, for complainant.
*Greene, Kennedy & Greene*, for respondents.